UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| ALEXANDER WATKINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 1:05-CV-322 |
| | ) | |
| JO ANNE B. BARNHART, | ) | Chief Judge Curtis L. Collier |
| Commissioner of Social Security | ) | |
| | ) | |
| Defendant. | ) | |

## **M E M O R A N D U M**

Plaintiff Alexander Watkins ("Plaintiff") initiated this action November 18, 2005, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) (Court File No. 1). Plaintiff is seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for a period of disability, disability insurance benefits, and supplemental security income (collectively referred to as "benefits") under Titles II and XVI of the Social Security Act, *id*. §§ 416(I), 423, and 1382. The final decision of the Commissioner is the decision of Administrative Law Judge Eduardo Soto (the "ALJ") dated June 17, 2005 (Court File No. 5, p. 16-24).

The Court referred this matter to United States Magistrate Judge Susan K. Lee pursuant to 28 U.S.C. § 636(b) and in accordance with Fed. R. Civ. P. 72(b). The Court asked Judge Lee to review Plaintiff's motion for judgment on the pleadings (Court File No. 8) and the Commissioner's motion for summary judgment (Court File No. 12) and to issue a Report and Recommendation ("R&R"). Judge Lee filed an R&R February 5, 2007 (Court File No. 15). The R&R recommends (1) affirming the Commissioner's decision, (2) granting the Commissioner's summary judgment

motion, (3) denying Plaintiff's motion for judgment on the pleadings, and (4) dismissing this case (*id*. at p. 1). Plaintiff timely objected to the R&R (Court File No. 16), requesting the Court reverse the denial of benefits and remand the case for proper consideration (*id*. at p. 10).

For the following reasons, the Court will **GRANT** Plaintiff's motion and **REMAND** this case for additional consideration.

I. **Standard of Review**

This Court conducts a *de novo* review of the portions of the R&R to which objections are made, and may accept, reject, or modify, in whole or in part, the magistrate judge's findings and recommendations. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The Court's standard of review is essentially the same as the magistrate judge's – review is limited to determining if the ALJ's findings are supported by substantial evidence and if proper legal standards were used. 42 U.S.C. § 405(g); *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir.1989). "Substantial evidence" means evidence a reasonable mind might accept to support the conclusion at issue. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is greater than a scintilla but less than a preponderance. *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994); *Brainard*, 889 F.2d at 681. If supported by substantial evidence, the Court must affirm the ALJ's findings, even if substantial evidence also supports the opposite conclusion. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003).

The ALJ need not discuss every aspect of the record or explain every finding at length but must "articulate with specificity reasons for the findings and conclusions that he or she makes" to facilitate meaningful judicial review. *Bailey v. Comm'r of Soc. Sec.*, 1999 WL 96920, *4 (6th Cir. Feb. 2, 1999) (reported in table format, 173 F.3d 428).

Under Sentence Four of 42 U.S.C. § 405(g), the Court has power to remand a case to the Commissioner if there is insufficient evidence on the record and additional fact-finding is required. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994). Under a Sentence Four remand, additional evidence may be taken on rehearing by an ALJ. *Faucher*, 17 F.3d at 174.[1] Under Sixth Circuit case law, Sentence Four provides appropriate relief when the evidence on record is insufficient and further fact-finding by an ALJ is necessary. *Id.* at 175-76 ("when there is not substantial evidence to support one of the ALJ's factual findings and his decision therefore must be reversed, the appropriate remedy is not to award benefits. The case can be remanded under sentence four of 42 U.S.C. § 405(g) for further consideration.").

## II.     Facts

The prior procedural/administrative history and Plaintiff's medical history is exhaustively set out in Judge Lee's R&R. This Court **ADOPTS** the factual background as explained in the R&R (Court File No. 15, p. 2, 6-18). In brief, Plaintiff suffers from severe, bone-on-bone arthritis in both knees (*id.* at p. 6), which is reflected in his medical records and the evaluations of some six doctors and three consultative examiners. Plaintiff has undergone multiple surgeries (*e.g.*, *id.* at p. 6-7, 9). Plaintiff has been prescribed knee braces on several occasions (*e.g.*, *id.* at p. 8, 13). Plaintiff likely needs dual knee replacements but is considered too young and sometimes too large for such drastic surgery (*e.g.*, *id.* at p. 9, 12, 15). In addition, though not addressed as its own medical condition in the doctors' reports, Plaintiff has a very large frame and is obese (*e.g.*, *id.* at p. 12, 14).

---

[1] There is a second type of remand under Sentence Six of 42 U.S.C. § 405(g), whereby the court may order additional evidence to be taken upon a showing that there is (1) material new evidence and (2) good cause such evidence was previously omitted from the record. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994).

## III. The Five-Step Test and the ALJ's Analysis

Entitlement to Social Security benefits is determined by a five-step sequential analysis set forth in the Social Security Regulations, 20 C.F.R. §§ 404.1520 & 416.920. An ALJ must generally proceed through each of the five steps to make a finding of disability:

(1) A claimant must not be engaged in substantial gainful activity for at least twelve months;

(2) A claimant's impairment must be "severe," i.e. it lasts for more than one year;
(3) A claimant's impairment must meet or equal the severity of one of the many impairments listed at 20 C.F.R., pt. 404, subpt. P, App.1 (the "Listings"), which identify and define impairments of sufficient severity to *per se* prevent gainful activity;
(4) A claimant must not possess residual functional capacity ("RFC") to return to any past relevant work; and
(5) A claimant must not be able to perform other work which accommodates his RFC and vocational factors (age, education, etc.), and which exists in significant numbers in the regional/national economy.

*See* 20 C.F.R. §§ 404.1520(a)(4), (b)-(g); *see also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). If a claimant's impairment(s) meets or equals a Listing, the claimant is irrebuttably presumed disabled and the ALJ need not continue through Steps Four and Five. 20 C.F.R. §§ 416.925(a); *Lankford v. Sullivan*, 942 F.2d 301, 309 (6th Cir. 1991). The claimant bears the burden of proof that his impairments meet or equal a Listing. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987).

Here, as stated in the administrative record and the R&R, the ALJ found:

(1) Plaintiff has not engaged in substantial gainful activity since September 2, 1999;
(2) Plaintiff has "severe" impairments;
(3) Plaintiff has no impairments, singly or in combination, that meet or equal in severity the criteria of any Listing;
(4) Plaintiff cannot perform past relevant work; and
(5) Plaintiff has the RFC to perform sedentary work and Plaintiff can perform work existing in significant numbers in the regional/national economy.

(Court File No. 15, p. 5) (citing Court File No. 5, p. 26-24).

**IV.    Analysis of Plaintiff's Objections**

Plaintiff makes two principal objections to the R&R: (1) the ALJ failed to follow the Commissioner's rulings and regulations regarding obesity (Court File No. 16, p. 2); and (2) the ALJ failed to examine, or at least failed to articulate, whether Plaintiff meets or equals Listing 1.02A (*id.*). Plaintiff requests his claim be remanded to the Commissioner for proper consideration of his obesity and of his impairments as compared to Listing 1.02A (*id.* at p. 6). The Court will address each objection in turn.

**A.    The ALJ failed to follow the Commissioner's rulings and regulations because he failed to explicitly consider Plaintiff's obesity in making his determination.**

Plaintiff cites Social Security Ruling 02-01p ("SSR 02-01p" or the "Ruling") and regulations at 20 C.F.R., pt. 404, subpt. P, App. 1 § 1.00(Q)[2] for the proposition that obesity is a genuine medical condition which must be considered in making a disability determination (Court File No. 16, p. 2-3). Plaintiff also claims SSR 02-01p requires an ALJ to explain how consideration of obesity impacted the ALJ's conclusion on disability (*id.*). In Plaintiff's case, the ALJ did not

---

[2] Listing 1.00Q (*Effects of obesity*) provides in pertinent part:
The combined effects of obesity with musculoskeletal impairments can be greater than the effects of each of the impairments considered separately. Therefore, when determining whether an individual with obesity has a listing-level impairment or combination of impairments, and when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity, adjudicators must consider any additional and cumulative effects of obesity.

SSR 02-01p (Court File No. 9-5) provides in pertinent part:
The combined effects of obesity with other impairments may be greater than might be expected without obesity. For example, someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone.

explicitly address obesity in rendering his decision (*id*.).

As stated in the R&R, the Commissioner concedes (1) Plaintiff is obese and (2) the ALJ did not explicitly discuss obesity in rendering his decision (Court File No. 15, p. 25). The Commissioner argues and the R&R agrees that remand is not appropriate because the ALJ implicitly relied on the opinions of consultative examiners and physicians who considered Plaintiff's obesity in making their assessments (*id*.).

In *Bledsoe v. Barnhart*, 165 F. App'x 408 (6th Cir. 2006), an unpublished opinion of the United States Court of Appeals for the Sixth Circuit, the claimant argued the ALJ did not follow procedures in SSR 02-01p and thereby committed reversible error. *Id*. at 411. The appeals court held SSR 02-01p does not require a particular "mode of analysis," but only requires the ALJ, while analyzing the five steps, to evaluate obesity as one factor affecting the severity of the impairments. *Id*. at 411-12. As long as the ALJ relies on opinions of physicians or consultative experts who took the claimant's obesity into account in rendering such opinions there is no need for the ALJ to detail separately his or her own consideration. *Id*. at 411. Similarly, in *Skarbek v. Barnhart*, 390 F.3d 500 (7th Cir. 2004), the United States Court of Appeals for the Seventh Circuit refused to reverse an ALJ's decision though the ALJ did not discuss the claimant's obesity because such discussion would not change the outcome. *Id*. at 504. *Rutherford v. Barnhart*, 399 F.3d 546 (3d Cir. 2005), is also on point. Again, the claimant alleged error because the ALJ failed to explicitly consider obesity in making the disability determination. *Id*. at 552. The appeals court noted that the claimant had never mentioned obesity as a contributor to her inability to work. *Id*. The court reasoned the ALJ should have been "alerted" to obesity as a factor (the claimant was 5'2" and weighed 245 pounds) but the claimant did not specifically identify how obesity aggravated her alleged impairment and thus she

6

failed to carry her burden of proof. *Id*. at 552-53.

In an unreported case decided after *Bledsoe*, the United States Court of Appeals for the Ninth Circuit held an ALJ erred by not acknowledging or specifically considering the claimant's obesity, given the text of SSR 02-01p. *Petersen v. Barnhart*, 2006 WL 3786665, *3 (9th Cir. 2006). The court contrasted that the claimant's treating physicians made numerous references to obesity in the medical records but the ALJ's opinion nonetheless failed to discuss it or even mention the claimant's weight. *Id*. The Ninth Circuit held:

> [I]t is the ALJ's responsibility to determine the effect of a claimant's obesity on her other impairments, as well as its effect on her overall health and ability to work . . . [T]he ALJ was required to develop the factual record necessary to determine the impact of Petersen's obesity. By failing to discuss and consider Petersen's obesity in the disability analysis, the ALJ erred.

*Id*. This case is instructive because the appeals court distinguished its prior decision in *Burch v. Barnhart*, 400 F.3d 676 (9th Cir. 2005), where it had held an ALJ's failure to explicitly discuss the claimant's obesity at Step Two was harmless error as it did not affect the decision at Steps Four or Five. *Id*. at 682-83. In *Petersen* (like the instant case and unlike *Bledsoe*), the ALJ did not address the claimant's obesity at any point; therefore, the Ninth Circuit reasoned such omission was not harmless error. *Id*. A very recent district court opinion, *Stemple v. Astrue*, __ F. Supp. 2d __, 2007 WL 601566 (D. Md. Feb. 26, 2007), citing the same cases[3] and similar facts,[4] noted an

---

[3] *See Stemple v. Astrue*, 2007 U.S. Dist. LEXIS 13081, *37 __ F. Supp. 2d __, 2007 WL 601566, * 10 (D. Md. Feb. 26, 2007) ("Despite the seeming clarity of the Agency's instructions regarding the consideration of obesity, some courts have found harmless error in certain cases where the ALJ fails to discuss a claimant's obesity.") (citing *Rutherford v. Barnhart*, 399 F.3d 546, 551-552 (3rd Cir. 2005); *Skarbek v. Barnhart* 390 F.3d 500, 504 (7th Cir. 2004); *Bledsoe v. Barnhart*, 165 F. App'x 408, 410 (6th Cir. 2006)). As discussed above, the court held, though it recognized "the reasonableness of this approach," the ALJ's error was not harmless, because (1) the facts were distinguishable from *Bledsoe*, *Skarbek*, and *Rutherford*, and (2) Fourth Circuit law and SSR 02-01p were clear regarding the *de minimis* articulation standard required (specifically in this

7

"individualized assessment must be undertaken in each case to determine the impact of obesity on an individual's functioning and its severity or lack thereof." *Id*. at *10 (citing *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (holding, to assure meaningful review, an ALJ must explicitly indicate the weight given to all relevant evidence)). The court remanded to the Commissioner because the ALJ did not make such an individualized assessment.

In this case, *Bledsoe* and *Skarbek* are distinguishable, for four reasons. First, in *Bledsoe*, the ALJ explicitly mentioned the claimant's obesity in the findings. *Bledsoe*, 165 F. App'x at 412. As Plaintiff points out in this case, "to read the ALJ decision, one would never know Mr. Watkins is overweight at all, let alone over 400 pounds" (Court File No. 16, p. 5). The ALJ's opinion is simply deficient in detail. The administrative hearing reflects only brief mention of Plaintiff's weight, when his counsel asked how much Plaintiff weighed (Court File No. 5, p. 250, 270). When the ALJ found Plaintiff's impairments were severe, the ALJ mentioned only joint disease and arthritis and failed to mention obesity (*id*. at p. 20).[5]

---

case, for a finding of severity at Step Two). *Id*. at *10-11.

[4] One difference in this case was the ALJ's analysis ended at Step Two.

[5] Another district court has found the mention of obesity dispositive as to the ALJ's consideration of the condition. *See Campbell v. Comm'r of Soc. Sec.*, 2002 WL 31107503, *3 (E. D. Mich. Aug. 15, 2002).

> Plaintiff contends solely that the ALJ erred because he "failed to evaluate [her] obesity[,]" however, a cursory reading of his decision proves otherwise. Specifically, the ALJ found at step two that Plaintiff's obesity constituted a severe impairment under the Act. . . . [At Step Four] the ALJ evaluated the entire record relating to each of the severe impairments, and paid particular attention to those documents discussing her knee condition, which the record physicians inextricably tied to her obesity. This is especially important because there are no record evaluations of Plaintiff's 'obesity' per se, which is often the case in disability actions.

*Id*.

8

Second, in the short Prehearing Memorandum, the only Listing to which Plaintiff's counsel directed the ALJ's attention was the former obesity criteria (Court File No. 5, p. 147). It seems strange, since Plaintiff specifically raised obesity as grounds for disability, the ALJ did not make a finding. While the medical records uniformly note Plaintiff's "large frame" and weight (*e.g.*, Court File No. 5, p. 233), none of the records do much more than simply note. Neither Plaintiff's doctors nor the consultative examiners specifically discuss obesity or the impact of obesity on Plaintiff's knees.[6]

Third, the *Bledsoe* claimant argued that the ALJ failed to follow the SSR 02-01p "mode of analysis." *Bledsoe*, 165 F. App'x at 412-13. Plaintiff does not request a particular mode of analysis; rather, Plaintiff requests the ALJ engage in *any* analysis, i.e., consider Plaintiff's extreme obesity and its aggravating effect on Plaintiff's arthritic condition (Court File No. 16, p. 3).

Fourth, the *Bledsoe* claimant suffered from asthma, pulmonary disease, tarsal and carpal tunnel syndrome, anxiety, and depression. *Bledsoe*, 165 F. App'x at 409. Here, Plaintiff's osteo-arthritis of a weight-bearing joint is "precisely the combination of impairments Ruling 02-1p directs an adjudicator's attention to" (Court File No. 16, p. 3).

Finally, this case is distinguishable from the argument in *Rutherford*, in which the claimant "never mentioned obesity as a condition that contributed to her inability to work" and "has not specified how that factor would affect the five-step analysis undertaken by the ALJ." *Rutherford*,

---

[6] As noted in the R&R, there was some consideration of the impact of Plaintiff's size in deciding whether or when Plaintiff could have a total knee replacement (Court File No. 15, p. 26). At the same time, several of the physicians failed to mention Plaintiff's size and instead focused on his age and the amount of post-traumatic arthritis (*e.g.*, Court File No. 5, p. 196, 230, 261). The consideration given to Plaintiff's size or obesity by each of his physicians and the consultants is not wholly clear and this Court does not find substantial evidence to support the ALJ's decision without further explanation.

9

399 F.3d at 552-53. By contrast Plaintiff (1) alleged he is severely obese by the Commissioner's own definition (Court File No. 5, p. 147); (2) noted that his combination of arthritis and obesity is "precisely the combination of impairments Ruling 02-1p directs an adjudicator's attention to" (Court File No. 16, p. 3); and (3) specified the former obesity Listing as the Listing he claimed to meet or equal in his Prehearing Memorandum (Court File No. 5, p. 147), which suggests the internal guidelines and case law surrounding the former obesity Listing would inform the five-step analysis to be undertaken by the ALJ.

### B. The ALJ erred by failing to evaluate whether Plaintiff met the requirements of Listing 1.02A.

As explained above, decisions on benefits are made following a five-step sequence. 20 C.F.R. § 404.1520. At Step Three, the actual disabling effects of a claimant's impairment(s) are considered. A claimant must show his or her impairment(s) is the same or as severe as one of the Listings. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006). Meeting or medically equaling a Listing raises an irrebuttable presumption of disability. *Lankford v. Sullivan*, 942 F.2d 301, 309 (6th Cir. 1991).

In his objections, Plaintiff claims to have made a *prima facie* case for disability under Listing 1.02A (Court File No. 16, p. 6-7). Plaintiff avers to have severe knee problems which limit his ability to ambulate effectively (*id.*). Plaintiff claims the ALJ incorrectly failed to evaluate Plaintiff's impairments against Listing 1.02A (*id.*).

Listing 1.02, "Major dysfunction of a joint(s) (due to any cause)," is characterized "by gross anatomical deformity . . . and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s)." 20 C.F.R. pt. 404, subpt. P, App. 1 § 1.02. To be disability-level severe, at least "one major peripheral weight-bearing joint (i.e., hip, knee, or ankle)"

must be involved, "resulting in inability to ambulate effectively, as defined in 1.00B2b." *Id.* § 1.02. Listing 1.00B2b defines the "inability to ambulate effectively." Subpart (1) is titled "Definition." It describes "inability to ambulate effectively" as an extreme limitation on walking and refers to the use of "a hand-held assistive device(s) that limits the functioning of both upper extremities." *Id.* § 1.00B2b(1). Subpart (2) has no title but provides examples of ineffective ambulation such as "the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail." *Id.* § 1.00B2b(2).

The ALJ did not discuss or mention Listing 1.02A by name; however, the ALJ found the "claimant has 'severe' impairments, as described in the decision, but does not have an impairment or combination of impairments" which met any of the Listings (Court File Nos. 5, p. 24; 15, p. 18). Thus, the administrative record suggests all of the Listings were considered but lacks any explanation of the ALJ's rationale. Plaintiff contends remand is necessary so the ALJ and the Commissioner can provide a decision-making rationale with respect to Listing 1.02A (Court File No. 16, p. 10).

As the R&R states, the "crux of the issue in this case is whether meaningful judicial review of the Commissioner's decision at step three of the five step sequential analysis can occur" (Court File No. 15, p. 16). The general rule is an ALJ should explain his or her Step Three conclusion. *Fischer-Ross v. Barnhart*, 431 F.3d 729, 734-35 (10th Cir. 2005); *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). If the ALJ's Step Three finding is "conclusory," courts are divided as to whether

11

remand is automatic or the district court should review the decision in its entirety to see if substantial evidence supports it. *Compare Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) (holding an ALJ must adequately explain his or her evaluation of the claimant's impairments and if ALJ does not, a claimant is entitled to remand for proper consideration); *Marcia v. Sec'y of Health & Human Servs.*, 900 F.2d 172, 176 (9th Cir. 1990) (same); *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10 th Cir. 1996) (requiring an ALJ to discuss the evidence and explain the Step Three finding); *Miller v. Comm'r of Soc. Sec.*, 181 F. Supp. 2d 816, 819-20 (S.D. Ohio 2001) (noting the Sixth Circuit has not addressed the issue but citing cases in other circuits "uniformly" requiring an ALJ to "explain in detail why a Social Security claimant is, or is not, disabled under the Listings" and remanding to the ALJ) *with Rice v. Comm'r of Soc. Sec.*, 384 F.3d 363, 369-70 (7th Cir. 2004) (refusing to hold "ALJ's failure to explicitly refer to the relevant listing alone necessitates reversal and remand"); *Senne v. Apfel*, 198 F.3d 1065, 1067 (8th Cir. 1999) ("a deficiency in opinion-writing is not a sufficient reason for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case"); *Williams v. Barnhart*, 2005 U.S. Dist. LEXIS 42030 (E.D. Mich. Oct. 24, 2005), accepted by 407 F. Supp. 2d 862 (E.D. Mich. 2005) (ALJ failed to comply with articulation requirement, failure was subject to harmless error analysis).

Plaintiff cites *Abbott v. Sullivan*, 905 F.2d 918, 924-25 (6th Cir. 1990),[7] in which the Sixth Circuit ordered remand when the disability decision failed to analyze if a particular Listing was met, despite evidence the claimant's IQ was within the Listing's range. *Id.* On the other hand, the R&R

---

[7] *Abbott v. Sullivan*, 905 F.2d 918, 925 (6th Cir. 1990) ("Nowhere in its opinion does the [Appeals] Council refer to section 12.05 or any of the unique criteria for determining disability contained therein. . . . The sole discussion of the appendix 1 listings for mental impairments contained in the written decision is no more than a formulaic restatement of the findings regarding the B criteria in Section IV of the psychiatric technique review form.").

relies on *Bledsoe*, 165 F. App'x at 411, for the proposition an ALJ need not articulate at length the analysis of the medical equivalency issue as long as substantial evidence supports the findings.

In *Letner v. Barnhart*, Case No. 1:04-CV-127 (E.D. Tenn. Sept. 30, 2005), this Court found that the purpose of the articulation requirement is to ensure thorough and fair judicial review. *See also Clifton*, 79 F.3d at 1009.[8] In *Letner*, this Court held remand is not automatic but is warranted only after review of the ALJ's decision as a whole, if other portions of the decision and the administrative record do not provide substantial evidence to support a superficial Step Three explanation. Here, this Court reaffirms its conclusion in *Letner* and **ACCEPTS** and **ADOPTS** a similar conclusion stated in the R&R (Court File No. 15, p. 22). This Court will accordingly review the ALJ's decision to see if substantial evidence exists to support finding Plaintiff's impairments do not meet or equal Listing 1.02A.

*Letner* is a fair comparison to this case, because the record was well developed. There was substantial evidence to support the ALJ in finding the claimant did not meet any Listing criteria, specifically 1.02A, because the record demonstrated the claimant: (1) was not using any assistive devices and had never been prescribed assistive devices for walking; (2) was able to shop, cook, do indoor household chores, take care of finances, and drive to visit friends on a weekly basis; (3) had full a range of motion in her knees; (4) had pain which was controllable by medication; and (5) was only limited in her ability to stand/walk for more than six hours a day (Case No. 1:04-CV-127, Court

---

[8] This Court found it "logical that even when an ALJ has not referred specifically to the listing or an ALJ has made a conclusory step three decision, if a thorough and fair review is still possible, then remand is not necessary. Whether a thorough and fair review is possible in an individual case will depend on a reading of the record as a whole." *Letner v. Barnhart*, Case No. 1:04-CV-127, Court File No. 23, p. 4-5 (citing *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001)).

File No. 23, p. 5-6).

Here, on the other hand, the record is not developed enough to reach a similar conclusion. Unlike the claimant in *Letner*, Plaintiff was prescribed assistive devices, though not specifically the hand-held kind referenced in Listing 1.00B2b. Plaintiff was given knee braces for each leg (*e.g.*, Court File No. 5, p. 21, 188, 194). In terms of equaling Listing 1.02A, the R&R correctly highlights the key issue: whether Plaintiff can ambulate effectively (Court File No. 15, p. 24). However, the R&R appears to read the cross-referenced Listing 1.00B2b(1) to require use of a hand-held assistive device in order for a claimant to demonstrate he/ she cannot ambulate effectively (Court File No. 15, p. 23).[9] Plaintiff emphasizes Listing 1.00B2b(2) (Court File No. 16, p. 9), which provides several examples of ineffective ambulation, *e.g.*, the inability to walk without assistive devices, to walk a block at a reasonable pace on uneven surfaces, or to use standard public transportation. 20 C.F.R. pt. 404, subpt. P, App. 1 § 1.00B2b(2). The question is close, but when 1.00B2b(1) is read in conjunction with 1.00B2b(2), it does not appear hand-held assistive devices are absolutely required in order for a claimant to meet or equal Listing 1.02A. This Court could discern no case in which a claimant's reliance on hand-held assistive devices (versus knee braces or nothing) was dispositive, and several cases where the court implied that the use of assistive devices was considered as a factor among other evidence. *See Smith v. Barnhart*, 2005 WL 1785273, *7 (W.D.

---

[9] The R&R cites *Bingaman v. Comm'r of Soc. Sec.*, 186 F. App'x 642 (6th Cir. 2006). In *Bingaman*, the Sixth Circuit held that the impairments did not meet/equal Listing 1.03 because the evidence showed the claimant (1) did not require hand-held assistive devices to walk and (2) could perform household chores, including vacuuming. *Id.* at 645. This Court reads *Bingaman* in the same way it reads *Smith* and *Caballero*, *supra*, i.e., the fact the claimant did not use hand-held assistive devices was a significant factor, but not dispositive, in the court's holding. Moreover, in *Bingaman* there was evidence on record that the claimant could participate in activities of daily living. Here, as explained above, the administrative record lacks information on the limits Plaintiff's disabilities impose on his activities of daily living.

Wisc. July 27, 2005); *Caballero v. Barnhart*, 2003 WL 22594256, *4-6 (E.D. Pa. Sept. 29, 2003). Furthermore, a notable omission is that the ALJ does not extensively discuss Plaintiff's ability to ambulate in his decision (*see* Court File No. 5, p. 20-23). The ALJ cites Dr. Holland's evaluation in December 2002 (Plaintiff "performed adequate station and gait testing") yet does not reconcile this with Dr. Gaines' evaluation in 2005 ("claimant was unable to toe or heel walk") (*id*. at p. 20-21). As the ALJ does not address ambulation, it appears Listing 1.02A may not have been considered.

In addition, the record is bare of discussion as to Plaintiff's limitations on daily life activities. The only detail on Plaintiff's daily limitations is Plaintiff's statement he has trouble cooking (*id*. at p. 143). The ALJ never asked questions at the hearing, nor does the decision mention, if Plaintiff can shop, perform household chores, run errands, or drive. It is Plaintiff's burden to prove his limitations, but Plaintiff testified he can stand for fifteen minutes and his knees slip when he sits (*id*. at p. 250-51), claims not discussed by the ALJ. The decision states "claimant has alleged a limitation in the performance of activities of daily living" (which the ALJ finds less than credible, *id*. at p. 21-22), but the ALJ does not develop the record as to what activities were limited. In *Bledsoe*,[10] the Sixth Circuit found it telling, "Bledsoe's myriad of impairments do not stop her from engaging in normal activities. She drives, cooks, reads, makes her bed, washes dishes, does laundry,

---

[10] Additionally, in *Bledsoe* the Sixth Circuit found no error because the "ALJ described evidence pertaining to all impairments, both severe and non-severe, for five pages earlier in his opinion and made factual findings. . . . The ALJ did discuss Bledsoe's non-severe medical conditions [(auto accident, headaches, carpal tunnel syndrome, lesion on right thorax, anxiety and depressive disorders, foot pain, hypertension, obesity)]. The record reflects that the ALJ considered many non-severe impairments. Thus, the ALJ did not err." *Bledsoe*, 165 F. App'x at 411. Here, the ALJ very briefly discussed Plaintiff's back and hip pain and failed to discuss his obesity, which does not demonstrate the ALJ considered all of Plaintiff's impairments, severe and non-severe.

attends church, watches television, goes grocery shopping weekly, and cares for her grandchildren." *Bledsoe*, 165 F. App'x at 409. Again, in contrast, there is no similar development, either at the hearing or in the decision, as to the impact of Plaintiff's disabilities on Plaintiff's daily activities.

According to the experts, *Letner*'s knee pain only limited her standing and walking ability to "more than six hours a day." (Case No. 1:04-CV-127, Court File No. 23, p. 5-6.) Here, the medical consultant, Dr. Gaines, found Plaintiff could stand at most two hours per day (Court File No. 5, p. 225). Plaintiff alleged disabling knee pain and the vocational expert agreed, if the pain was as extreme as Plaintiff claimed, he would be unable to work (Court File No. 5, p. 274). However, the ALJ discounted Plaintiff's testimony about his pain because the level of treatment Plaintiff sought did not appear to indicate pain to a debilitating degree (*id*. at p. 22). The ALJ's reasoning is based on some review of the medical records, and the ALJ cited: (1) Plaintiff was not compliant with physical therapy, (2) Plaintiff failed to attend a preoperative appointment, (3) Plaintiff never went through with a knee replacement, and (4) Plaintiff reported the inability to afford medical treatment but did not seem to seek out free medical treatment in the community (*id*.).

Social Security Ruling 96-7p[11] requires an ALJ evaluate the credibility of a claimant's pain complaints. This Ruling guides an ALJ in how to assess credibility and directs the ALJ to review the entire record, including objective medical evidence and the claimant's subjective statements. *Id*. The ALJ must also consider a list of factors, including the claimant's daily activities and factors that may precipitate or aggravate the pain. *Id*. SSR 96-7p imposes a duty to "make every reasonable effort to obtain available information that could shed light" on credibility. *Id*.

---

[11] *Available at* http://www.ssa.gov/OP_Home/rulings/di/01/SSR96-07-di-01.html (last visited Mar. 12, 2007).

16

Generally, this Court defers to the ALJ's opinion on credibility as the ALj is the finder of fact and has opportunity to observe and evaluate the claimant. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 252, 531 (6t h Cir. 1997). At the same time the ALJ's credibility determination must be supported by substantial evidence. *E.g.*, *id*. In this case, the Court will not defer to the ALJ's decision because it is not supported by substantial evidence and did not appear to follow the rules of SR 97-6p. As stated above, the ALJ did not ask about Plaintiff's daily life activities and failed to clearly consider Plaintiff's obesity, which seems to be a factor that aggravates symptoms of Plaintiff's osteoarthritis. Plaintiff explained some of his inconsistencies, i.e., he claimed to have gone to a preoperative appointment (Court File No. 5, p. 193), which the ALJ did not discuss. The ALJ certainly did not "make every reasonable effort to obtain available information that could shed light" on Plaintiff's credibility.

Moreover, under SSR 96-7p, an ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." SSR 96-7p. The ALJ may need to question the claimant at the administrative hearing or to re-contact the claimant in order to ascertain whether there are good reasons that the individual does not seek medical treatment in a consistent manner. *Id*. The inability to afford treatment or lack of access to free or low-cost medical services is given as an example "which may provide insight" into credibility, but would also require additional data-gathering, i.e. as to the individual's lack of access. Here, the ALJ stated there was no evidence on the record that Plaintiff sought free or low-cost medical treatment; there is nothing in the record indicating much effort to develop such record,

17

despite SSR 96-7p's requirement.

For these reasons, the grounds given by the ALJ are insufficient to support his credibility finding, particularly when the ultimate decision of disabled/not disabled relied heavily on the weight given to Plaintiff's complaints of pain.[12]

## III. Conclusion

In short, the ALJ's decision and findings are insufficient to ensure this Court's fair review because there is no explanation of whether the ALJ considered Plaintiff's obesity or considered whether Plaintiff's condition met Listing 1.02A. Upon the Court's own review, it appears there is not substantial evidence at this time, on this record.

Therefore, the Court will **ACCEPT** and **ADOPT** the magistrate judge's findings of fact, and some of the conclusions of law, as identified specifically above. This Court will **NOT ACCEPT** the R&R's recommendations (Court File No. 15). This Court will **GRANT** Plaintiff's motion for judgment on the pleadings (Court File No. 8) and **DENY** the Commissioner's motion for summary judgment (Court File No. 12). This Court will **REVERSE** the Commissioner's decision denying benefits to Plaintiff.

---

[12] *Accord Parris v. Barnhart*, 2004 U.S. Dist. LEXIS 26816, *30-35 (N.D. Ill. Dec. 28, 2004) ("[a]lthough the ALJ said that Ruling 96-7p informed his credibility determination, he did not follow the guidelines established therein"); *Windus v. Barnhart*, 345 F. Supp. 2d 928, 949 (E.D. Wisc. 2004) (the ALJ found the failure to pursue medical treatment decreased the claimant's credibility; the court held the ALJ had to address the claimant's explanation that her health insurance would not cover the treatments). *See also Selby v. Barnhart*, 48 F. App'x 576, 579-82 (7th Cir. 2002); *Schwindt v. Barnhart*, 2004 WL 1846132, *3 (D. Kansas Apr. 9, 2004) ("The court is troubled that the ALJ appeared to rely heavily upon plaintiff's alleged failure to pursue medical treatment as grounds to discount her claims of pain without addressing factors which might explain why that failure occurred. . . . In addition, the ALJ did not address plaintiff's activities of daily living in any detail in conjunction with his pain analysis, as required by 20 C.F.R. § 404.1529") (citing *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993)).

This Court will **REMAND** this matter to the Commissioner under the fourth sentence of 42 U.S.C. § 405(g) for further fact-finding by an Administrative Law Judge. In taking this step, this Court cautions Plaintiff there is no guarantee he will be awarded benefits upon further evaluation.

This Court simply finds there is not enough information in the ALJ's decision and on the administrative record to rise to the level of "substantial evidence." The ALJ is accordingly instructed (1) to explicitly consider Plaintiff's obesity as an aggravating factor in determining his disability, and (2) to fully consider, and state his reasons for determining, whether or not Plaintiff's impairments equal Listing 1.02A.

An order will enter.

/s/
**CURTIS L. COLLIER
CHIEF UNITED STATES DISTRICT JUDGE**